```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 12-2804(DSD/SER)
```

ANNEX MEDICAL, INC., STUART
LIND and TOM JANAS,

       Plaintiffs,

v.                                                        **ORDER**

KATHLEEN SEBELIUS, in her official
capacity as Secretary of the United
States Department of Health and
Human Services; HILDA SOLIS, in her
official capacity as Secretary of
the United States Department of Labor;
TIMOTHY GEITHNER, in his official
capacity as Secretary of the United States
Department of the Treasury; UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR;
and UNITED STATES DEPARTMENT OF THE
TREASURY,

       Defendants.

    Erick G. Kaardal, Esq. and Mohrman & Kaardal, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402 and Kaylan L. Phillips, Noel H. Johnson and Zac S. Kester, ActRight Legal Foundation, 209 West Main Street, Plainfield, IN 46168, counsel for plaintiffs.

    Bradley P. Humphreys, U.S. Department of Justice, 20 Massachusetts Avenue N.W., Washington, D.C. 20530, Ann M. Bildtsen, U.S. Attorney's Office, 400 South Fourth Street, Suite 600, Minneapolis, MN 55415; Haley N. Schaffer, Esq., William Z. Pentelovitch, Esq. and Maslon, Edelman, Borman & Brand, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402; Brigitte Amiri and Teresa J. Nelson, ACLU, 125 Broad Street, 18th Floor, New York NY 10004 and 2300 Myrtle Avenue, Suite 180, St. Paul, MN 55114, counsel for defendants.

    This matter is before the court upon the November 21, 2012, motion for preliminary injunction by plaintiffs Annex Medical, Inc.

(Annex) and Stuart Lind.[1]  Based on a review of the file, record, arguments of counsel and proceedings herein, and for the following reasons, the court denies the motion for preliminary injunction.

## BACKGROUND

This healthcare dispute arises from the March 23, 2010, implementation of the Patient Protection and Affordable Care Act (ACA).

**Affordable Care Act**

The ACA states that group health care plans must provide no-cost "preventative care and screening" for women "as provided for in comprehensive guidelines supported by the Health Resources and Services Administration" (HRSA).[2]  42 U.S.C. § 300gg-13(a)(4).  In response, defendants[3] requested that the HRSA determine what "preventative care and screening" was required by the ACA.  In conjunction with a recommendation from the Institute of Medicine,

---

[1] Tom Janas is also a plaintiff in the underlying action, but does not join Annex and Lind in the motion for preliminary injunction.

[2] The HRSA is a subagency of the Department of Health and Human Services.

[3] Defendants include Kathleen Sebelius, in her official capacity as Secretary of the Department of Health and Human Services; Hilda Solis, in her official capacity as Secretary of the Department of Labor; Timothy Geithner, in his official capacity as Secretary of the Department of the Treasury; the Department of Health and Human Services; the Department of Labor; and the Department of the Treasury.

the HRSA proposed that the ACA cover "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity."[4] FDA-approved contraceptive methods include diaphragms, oral contraceptive pills, emergency contraceptives and intrauterine devices (collectively, Contraceptive Services).[5] On February 15, 2012, defendants published rules adopting the HRSA recommendation (the Mandate). See 77 Fed. Reg. 8725, 8726 (Feb. 15, 2012).

Although employer-sponsored health care plans must comply with the Mandate, the ACA only requires entities with fifty or more employees to provide health care coverage. See 26 U.S.C. § 4980H. As a result, employers need not comply with the Mandate if they have less than fifty employees and choose to discontinue their group health plan. See id. § 4980H(c)(2)(A).

**Individual Plaintiffs**

Annex is a Minnesota-based corporation that manufactures medical devices. Ver. Compl. ¶ 36. Annex employs sixteen full-time and two part-time employees. Id. ¶ 63. The Annex mission statement provides that the company strives "to manufacture medical

---

[4] HRSM, Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines/ (last visited Jan. 7, 2012).

[5] FDA Office of Women's Health, Birth Control Guide, http://www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf (last updated Aug. 2012).

3

products of high quality and good value, while conducting business in a way that is pleasing to God and is faithful to Biblical principles and values." Id. ¶ 71.

Lind is a citizen of Minnesota and is the President and Chief Executive Officer of Annex. Id. ¶ 35. Lind is a "devout Catholic[] who [is] steadfastly committed to following the religious, ethical and moral teachings of the Catholic Church." Id. ¶ 44. In his operation of Annex, Lind strives to adhere to the teachings of the Catholic faith. See id. ¶¶ 45-46. These teachings explain that "[h]uman life must by respected and protected absolutely from the moment of conception." Id. ¶ 47 (alteration in original) (citation and internal quotation marks omitted). In other words, "Lind ... believe[s] that any action which either before, at the moment of, or after sexual intercourse, is specifically intended to prevent procreation is a grave sin." Id. ¶ 48 (citation and internal quotation marks omitted). As a result, Lind considers the use of any Contraceptive Service to be "intrinsically evil and immoral" and believes that "compliance with the Mandate is in direct violation of the Catholic faith." Id. ¶¶ 49-50.

Lind also believes that he has "a duty, when possible, to provide for the needs of others, including their health care." Id. ¶ 58. As part of this commitment, Annex contracts with Blue Cross and Blue Shield of Minnesota (Blue Cross) to provide a group health

4

plan for its employees.  Id. ¶¶ 59-60.  Annex's current Blue Cross plan year began on July 1, 2012.  Id. ¶ 78.  As such, Annex will not be subject to the Mandate until July 1, 2013, the first day of its next scheduled renewal.  Id. ¶¶ 79-80.

Sometime after July 27, 2012, Lind discovered that Annex's health care plan provided Contraceptive Services.  Id. ¶ 82-83.  In response, he requested that Blue Cross modify Annex's plan to exclude Contraceptive Services.  Id. ¶ 85.  Blue Cross informed Lind that it would be unable to make any changes because it requires group health plans with fewer than fifty subscribers to provide Contraceptive Services.  Id. ¶ 86.  Lind inquired with three other Minnesota insurers, but each stated that they would not provide a plan without Contraceptive Services.  Id. ¶¶ 87-88.  In response, on October 22, 2012, Lind notified Annex employees that Annex would discontinue its health care plan on January 31, 2013. Id. ¶ 94.

On November 2, 2012, plaintiffs filed suit alleging violations of (1) the Religious Freedom Restoration Act (RFRA), (2) the First Amendment (3) and the Administrative Procedures Act.  On November 21, 2012, Annex and Lind moved for a preliminary injunction, arguing that the Mandate violates RFRA.  The court issued a briefing schedule for the parties and for prospective amici curiae. On December 27, 2012, the court granted the American Civil Liberties Union and the American Civil Liberties Union of Minnesota

5

(collectively, ACLU) amicus curiae status. The court heard oral argument on January 4, 2013, and all parties and amicus curiae appeared through counsel.

**DISCUSSION**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between that harm and the harm that the relief may cause the non-moving party, and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

**I. Likelihood of Success on the Merits**

RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-9(a). A substantial burden is permissible, however, if the government "demonstrates that application of the burden to the person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Id. § 2000bb-1(b); see Gonzales v. O

6

Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 424 (2006) (same). In other words, the court applies strict scrutiny to federal statutes that substantially burden the free exercise of religion.

Exercise of religion is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).[6] In other words, RFRA's "guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." Love v. Reed, 216 F.3d 682, 688 (8th Cir. 2000) (citation and internal quotation marks omitted). Neither RFRA nor RLUIPA define the term "substantial burden." The Eighth Circuit explains, however, that

> [s]ubstantially burdening one's free exercise of religion means that the regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion.

United States v. Ali, 682 F.3d 705, 709-10 (8th Cir. 2012) (alteration in original) (citations and internal quotation marks omitted); Civil Liberties for Urban Believers v. City of Chi., 342 F.3d 752, 761 (7th Cir. 2003) ("[A] substantial burden on religious

---

[6] This definition is from the Religious Land Use and Institutionalized Persons Act (RLUIPA), which adopted RFRA's substantial burden inquiry.

7

exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable."). As explained by the Sixth Circuit, "[i]n the 'Free Exercise' context, the Supreme Court has made clear that the 'substantial burden' hurdle is high." Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 734 (6th Cir. 2007).

### A. Eighth Circuit Stay

Plaintiffs first argue that a likelihood of success exists because the Eighth Circuit issued a stay in O'Brien v. U.S. Department of Health & Human Services, No. 12-3357, slip op. at 1 (8th Cir. Nov. 28, 2012). Specifically, plaintiffs argue that the court should interpret the Eighth Circuit's stay as tantamount to a preliminary injunction. See Am. Pulverizer Co. v. U.S. Dep't of Health & Human Servs., No. 12-3459, slip op. at 1 (W.D. Mo. Dec. 20, 2012) (explaining that O'Brien "established precedent that on facts similar to those presented ... [p]laintiffs are likely to succeed on the merits"); see also Korte v. Sebelius, No. 12-3841, 2012 WL 6757353, at *4 (7th Cir. Dec. 28, 2012) ("[T]he Eighth Circuit granted a motion for an injunction pending appeal ... albeit without discussion.").

In O'Brien the district court dismissed the amended complaint under Rule 12, thereby rendering moot plaintiffs' motion for preliminary injunction. See O'Brien v. U.S. Dep't of Health & Human Servs., No. 4:12-CV-476, 2012 WL 4481208, at *15 (E.D. Mo. Sept. 28, 2012), staying enforcement of district court opinion pending decision on merits, No. 12-3357 (8th Cir. Nov. 28, 2012). In response, plaintiffs appealed the decision on the merits and requested the issuance of a preliminary injunction pending appeal. Instead of granting the injunction, the Eighth Circuit - in a one-sentence divided motions panel opinion - issued a stay pending appeal.

Citing Pulverizer in support, plaintiffs argue that the court should interpret the Eighth Circuit stay as akin to a preliminary injunction and conclude that a likelihood of success on the merits exists. Defendants respond that the Eighth Circuit may merely have been staying enforcement of the judgment of the district court pending appeal. The O'Brien panel did not provide a rationale for its decision, and the court concludes that it cannot, with a reasonable level of certainty, interpret the stay pending appeal as

indicating a likelihood of success on the merits.[7] As a result, the court engages in an independent analysis of plaintiffs' likelihood of success on the merits.

**B.   Independent Analysis**

Plaintiffs argue that their exercise of religion is substantially burdened because they must choose between providing health care in accordance with the Mandate or eliminate their employer-sponsored health plan. Both options, according to the plaintiffs, will substantially burden their practice of religion. Plaintiffs are either forced to provide health care that includes Contraceptive Services or forego an employer-sponsored health care plan and neglect the needs of their employees. The defendants respond that any burden imposed by the Mandate is too attenuated to constitute a substantial burden under RFRA.

The court finds persuasive the reasoning from the district court in O'Brien:

> [P]laintiffs remain free to exercise their religion, by not using contraceptives and by discouraging employees from using contraceptives. The burden of which plaintiffs complain is that funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the] plan, subsidize

---

[7] The court also notes that "[d]ecisions by motions panels are summary in character, made often on a scanty record, and not entitled to the weight of a decision made after plenary submission." In re Rodriquez, 258 F.3d 757, 759 (8th Cir. 2001) (per curium) (citation and internal quotation marks omitted).

> someone else's participation in an activity that is condemned by plaintiffs' religion. This Court rejects the proposition that requiring indirect financial support of a practice, from which plaintiff himself abstains according to his religious principles, constitutes a substantial burden on plaintiff's religious exercise.

Id. at *6 (emphasis omitted). In separate challenges to the Mandate, two circuit courts used substantially similar reasoning to deny injunctive relief. See Autocam Corp. v. Sebelius, No. 12-2673, slip op. at 2-3 (6th Cir. Dec. 28, 2012); Hobby Lobby Stores, Inc. v. Sebelius, No. 12-6294, slip op. at 7 (10th Cir. Dec. 20, 2012), application for injunction denied by Circuit Justice, No. 12A644 (U.S. Dec. 26, 2012) (Sotomayor, J., in chambers).

In response, plaintiffs explain that the Seventh Circuit recently enjoined enforcement of the Mandate. See Korte v. Sebelius, No. 12-3841, 2012 WL 6757353, at *4-5 (7th Cir. Dec. 28, 2012). The Seventh Circuit, however, uses a "sliding scale" inquiry that evaluates whether an adequate remedy at law exists and if there is some likelihood of success on the merits. See id. at *2. Once these threshold requirements are met, the court then balances each party's likelihood of success against the potential harm. Id. The Seventh Circuit's preliminary injunction inquiry is different than Dataphase, and the court in Korte concluded only that plaintiffs had "a reasonable likelihood of success on the merits." Id. The Eighth Circuit, meanwhile, requires that the movant establish a "substantial likelihood of success on the

11

merits." Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731-32 (8th Cir. 2008) (citation and internal quotation marks omitted). The Sixth and the Tenth Circuit use a similar standard. See Autocam Corp., No. 12-2673, at 1 (noting "relevant factor ... [as] whether the movant has shown a strong likelihood of success on the merits"); Hobby Lobby, No. 12-6294, at 3 ("[T]he movant must show ... a substantial likelihood of success on the merits ...."). Because the Eighth Circuit's preliminary injunction inquiry is analogous to the Sixth and Tenth Circuit's inquiry, the court finds persuasive their treatment of similar cases.

In so stating, the court acknowledges that other districts have reached differing opinions regarding plaintiffs' likelihood of success on the merits in challenges to the Mandate,[8] but concludes

---

[8] The court is aware of thirteen cases. Three courts denied injunctive relief. See Autocam Corp., No. 12-2673, at 2-3 (denying preliminary injunction; Hobby Lobby, No. 12-6294, at 7 (same); Grote Indus. v. Sebelius, No. 4:12-cv-00134, 2012 WL 6725905, at *6-7 (S.D. Ind. Dec. 27, 2012) (same). Nine courts granted injunctive relief. See Korte v. Sebelius, 2012 WL 6757353, at *1 (granting preliminary injunction); Triune Health Grp., Inc. v. U.S. Dep't of Health & Human Servs., No. 12 C 6756, slip op. at 1 (N.D. Ill. Jan. 3, 2012) (same); Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs., No. 2:12-CV-92, slip op. at 1 (E.D. Mo. Dec. 31, 2012) (granting temporary restraining order); Monaghan v. Sebelius, No. 12-15488, 2012 WL 6738476, at *3-6 (E.D. Mich. Dec. 30, 2012) (same); Conestoga Wood Specialties Corp. v. Sebelius, No. 12-6744, slip op. at 1 (E.D. Pa. Dec. 28, 2012) (same); Am. Pulverizer Co., No. 12-3459, at 1 (granting preliminary injunction); Tyndale House Publishers, Inc. v. Sebelius, No. 12-1635, 2012 WL 5817323, at *10-18 (D.D.C. Nov. 16, 2012) (same); Legatus v. Sebelius, No. 12-12061, 2012 WL 5359630, at *6 (E.D. Mich. Oct. 31, 2012) (same); Newland v. Sebelius, No. 1:12-cv-1123, 2012 WL 3069154, at *6-8 (D. Colo. July 27, 2012) (same), appeal
(continued...)

that RFRA was not designed to "protect against the slight burden on religious exercise that arises when one's money circuitously flows to support the conduct of other free-exercise-wielding individuals who hold religious beliefs that differ from one's own." O'Brien, 2012 WL 4481208, at *6. As a result, the court concludes that the Mandate places only a de minimis, not substantial, burden on plaintiffs' practice of religion under RFRA.[9] See Seven-Sky v. Holder, 661 F.3d 1, 5 n.4 (D.C. Cir. 2011) (holding that plaintiffs who objected to medical care on religious grounds were not substantially burdened under RFRA when forced to choose between obtaining health insurance or paying annual fee), abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566 (2012). As such, the court need not engage in an analysis of the Mandate under strict scrutiny. Therefore, the court concludes

---

[8](...continued)
docketed, No. 12-1380 (10th Cir. Sept. 26, 2012). As already explained, the court is uncertain of how to interpret the Eighth Circuit's treatment of O'Brien.

[9] In so stating, the court need not determine whether a secular, for-profit corporation, such as Annex, is capable of exercising religion. See Hobby Lobby Stores, Inc. v. Sebelius, 870 F. Supp. 2d 1278, 1291-92 (W.D. Okla. 2012) (finding that "for-profit corporations ... are not 'persons' for purposes of the RFRA."), aff'd, No. 12-6294 (10th Cir. Dec. 20, 2012) (denying preliminary injunction but declining to determine whether for-profit corporation can be a "person" under RFRA), application for injunction denied by Circuit Justice, No. 12A644 (U.S. Dec. 26, 2012) (Sotomayor, J., in chambers). But see Legatus, 2012 WL 5359630, at *4 (noting that corporation has standing to assert free-exercise rights as a "pass-through instrumentality" of its owners).

13

that plaintiffs cannot demonstrate a substantial likelihood of success on the merits, and this Dataphase factor weighs against entry of injunctive relief.

**II. Irreparable Harm**

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996) (per curiam) (citations omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

The court concludes that plaintiffs did not demonstrate a substantial likelihood of success on the merits, indicating that irreparable harm is unlikely. At this stage in the proceedings, however, the record is not developed and "a decision on the merits" has not been rendered. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999) (citations omitted). As a result, the court examines the potential harm alleged by plaintiffs.

Where, as here, a plaintiff alleges a violation of RFRA, "courts [hold] that a plaintiff satisfies the irreparable harm analysis." Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (citations omitted). This is because "[t]he loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Lowry ex rel. Crow v. Watson Chapel Sch. Dist., 540 F.3d 752, 762 (8th Cir. 2008) (citation and internal quotation marks omitted). Therefore, plaintiffs can demonstrate the possibility of irreparable harm, and this Dataphase factor weighs in favor of injunctive relief.

### III. Balance of Equities

Under the balance of equities, "a court should flexibly weigh the case's particular circumstances to determine whether ... justice requires the court to intervene to preserve the status quo." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citation and internal quotation marks omitted). In the present action, however, plaintiffs ask the court to enter a preliminary injunction to alter, not preserve, the status quo. Annex's current health care plan provides Contraceptive Services, and plaintiffs request that the court order Blue Cross or another health provider to make available a plan without Contraceptive Services. Moreover, Annex has been paying for such services, albeit unintentionally, for over a year. As a result, the court is unpersuaded that plaintiffs' alleged irreparable harm outweighs the government's interest in providing for the health of women and children. Therefore, this Dataphase factor weighs against entry of injunctive relief.

## IV. Public Interest

"[T]he determination of where the public interest lies ... is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights." Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008) (citations omitted), overruled on other grounds by Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678 (8th Cir. 2012) (en banc). As already explained, plaintiffs have not established a substantial likelihood of success on the merits. Therefore, this Dataphase factor weighs against entry of injunctive relief. Accordingly, based upon a balancing of the Dataphase factors, a preliminary injunction is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that plaintiffs' motion for preliminary injunction [ECF No. 7] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 8, 2013

                                             s/David S. Doty
                                             David S. Doty, Judge
                                             United States District Court